James George DOURIS, Plaintiff,

v.

Mark S. SCHWEIKER, Governor, Commonwealth of Pennsylvania; County of Bucks; Bucks County District Attorney's Office; Diane Gibbons; Michelle A. Henry; Anne Scheetz Damon; Timothy Rauch; All but Defendant Schweiker sued individually and in their official capacity. Held jointly and severally liable, Defendants.

No. 02–1749.

United States District Court, E.D. Pennsylvania.

Oct. 23, 2002.

Memorandum Denying Reconsideration
Nov. 22, 2002.

Brian M. Puricelli, Law Offices of Brian M. Puricelli, Newtown, PA, for Plaintiff.

Beth Anne Smith, Katherine H. Rebillard, Office of Attorney General, Deputy Attorney General, Frank A. Chernak, David E. Brier, Ballard, Spahr, Andrews & Ingersoll, LLP, Philadelphia, PA, David P. Karamessinis, Devlin, Devine and Casey, Conshohocken, PA, for Defendant.

### MEMORANDUM

BAYLSON, District Judge.

This civil rights case was commenced by plaintiff James George Douris ("Plaintiff" or "Douris") against the following defendants: Mark S. Schweiker, Governor of the Commonwealth of Pennsylvania ("Schweiker"); the County of Bucks ("Bucks County"); the Bucks County District Attorney's Office ("DA's Office"); Bucks County District Attorney Diane Gibbons, ("Gibbons"); Bucks County Assistant District Attorney Michelle A. Henry ("Henry"); Bucks County Assistant District Attorney Anne Scheetz Damon ("Damon"); and Timothy Rauch, a Bucks County police officer ("Rauch") (collectively "Defendants"). The Complaint contains six counts alleging violations and retaliation under the First Amendment and Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101 *et seq.*, 42 U.S.C. § 1983, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons.Stat. Ann. § 951 *et seq.* The Complaint also alleges violations of the Pennsylvania Constitution, malicious prosecution, abuse of process, conspiracy, and a constitutionally inadequate state appeals process. Defendants all have filed Motions to Dismiss. For the

reasons which follow, Defendants' Motions will be granted in part and denied in part.

### I. *Background*

In March 1998, Bucks County publicly posted a notice for a county park supervisor position. (Pl.'s Compl. ¶ 11). Plaintiff alleged that he was discriminated against when he went to the Bucks County Department of Human Resources Office to apply for the position because Bucks County allegedly failed to provide him an accommodation for his disability. *Id.* at ¶ 12. Plaintiff later filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Resources Commission ("PHRC"). *Id.*

On May 6, 1999, Plaintiff returned to the Bucks County Human Resources Office stating that he wanted to apply for a position. *Commonwealth v. Douris*, 766 A.2d 1276, 1277–78 (Pa.Super.2001). The receptionist handed him an application and told him that he was required to fill it out in the office. *Id.* at 1278. He then took the application, walked to the elevator, and when the receptionist tried to stop him, he pushed her against the wall, injuring her arm and neck. *Id.*

Douris was charged with harassment and prosecuted by the Bucks County DA's Office, represented by Gibbons and Henry. (Pl.'s Compl. ¶ 14). After a state district court justice convicted Douris of harassment, he appealed to the Court of Common Pleas, where the matter was heard *de novo*, the receptionist and a co-worker who witnessed the incident testified, and Douris was again found guilty of harassment. *Douris*, 766 A.2d at 1277. Douris alleges that in May 2000, he discovered that Defendants Bucks County, the DA's Office, Gibbons, and Henry withheld exculpatory information from him during his harassment prosecution in Bucks County. (Pl.'s Compl. ¶ 16). Douris appealed to the Su-

perior Court, and his conviction was affirmed. *Douris,* 766 A.2d at 1277. He also appealed the denial of his motion for a new trial and post-conviction relief, which the Superior Court affirmed. *Commonwealth v. Douris,* No. 694 EDA 2001, slip op. (Pa.Super.Ct. Nov. 5, 2001). The Pennsylvania Supreme Court denied Plaintiff's petition for allowance of appeal. *Commonwealth v. Douris,* No. 986 MAL 2001, slip op., 2002 WL 464900 (Pa. Mar.27, 2002).

Plaintiff's prior federal lawsuit resulted in a dismissal against two defendants, *Douris v. County of Bucks,* C.A. No. 99–3357, 2001 WL 767579, 2001 U.S. Dist. LEXIS 9282, at \*43 (E.D.Pa.2001 July 3, 2001); *Douris v. Brobst,* C.A. No. 99–3357, 2000 WL 199358, 2000 U.S. Dist. LEXIS 1579, at \*1 (E.D.Pa. Feb. 18, 2000), and a jury verdict and entry of judgment in favor of the remaining defendant, Bucks County, and against Plaintiff. *Douris v. County of Bucks,* No. 99–3357, slip op. (E.D.Pa. Aug. 2, 2001).

At some point in 2001, Douris was charged with impersonating a police officer, making terrorist threats, disorderly conduct, harassment, and duty to give information and render aid. (Pl.'s Compl. ¶ 18). Douris alleges that during the prosecution on these charges, Defendants Bucks County, the DA's Office, Gibbons, Damon, and Rauch destroyed and failed to provide exculpatory evidence to Douris. *Id.* at ¶ 19. Douris was not convicted of any of these charges. *Id.* at ¶ 20.

Plaintiff's Complaint contains six counts. Counts I V are brought against all Defendants, in their individual and official capacities, except Defendant Schweiker. Count VI is brought only against Defendant Schweiker. The Counts follow:

1. Retaliation in violation of the First Amendment and the ADA (Count I);
2. Violation of 42 U.S.C. § 1983 (Count II);
3. Retaliation under the Pennsylvania Human Relations Act ("PHRA") (Count III);
4. Malicious prosecution, abuse of criminal process, and conspiracy (Count IV);
5. Violation of the Pennsylvania Constitution and conspiracy (Count V); and
6. Unconstitutionally inadequate state appeals procedure in violation of 42 U.S.C. § 1983 (Count VI).

## II. *Legal Standard and Jurisdiction*

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. *Angelastro v. Prudential–Bache Sec., Inc.,* 764 F.2d 939, 944 (3d Cir.1985). A Rule 12(b)(6) motion will be granted only when it is certain that no relief could be granted under any set of facts that could be proved by the plaintiff. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, and venue is appropriate under 28 U.S.C. § 1391(b).

## III. *Analysis*

A. *Count I: Retaliation Under the ADA, First Amendment, and 42 U.S.C. § 1983*

1. *ADA Claim: Defendants Bucks County, DA's Office, Gibbons, Henry, Damon, and Rauch*

a. *Individual Capacity*

Plaintiff brings a retaliation claim under the ADA against Defendants Gibbons,

Henry, Damon, and Rauch in their individual capacities. The United States Supreme Court has not addressed the issue of individual liability under the ADA. The Third Circuit recently determined that individual defendants may be liable under Title III of the ADA if they own, lease, or operate a place of public accommodation. *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir.2002) (per curiam). In *Thiel*, the individual defendants did not operate the college and could not be held individually liable under Title III of the ADA. *Id.* at 189 ("This result comports with decisions of other courts of appeals holding that individuals are not liable under Titles I and II of the ADA, which prohibit discrimination by employers and public entities respectively" (citing *Garcia v. SUNY Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir.2001); *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir.1999); and quoting *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir.2000) ("the ADA addresses its rules to employers, places of public accommodation, and other organizations, not to the employees or managers of those organizations")).

Retaliation under the ADA[1], the claim at issue, falls under Title V, which the Third Circuit has not addressed as to individual liability. However, in considering the issue of individual liability under Title VII, the Third Circuit concluded that "Congress did not intend to hold individual employees liable under Title VII." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir.1996) (en banc), *cert. denied*, 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997)). The Third Circuit also has stated that "the ADA, ADEA, and Title VII all serve the same purpose—

to prohibit discrimination in employment against members of certain classes. Therefore, it follows that the methods and manner of proof under one statute should inform the standards under the others as well." *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.*, 60 F.3d 153, 157 (3d Cir.1995).

The "consensus view among district courts in this circuit is that individual liability cannot be imposed under the ADA." *Douris v. County of Bucks*, 2001 WL 767579, 2001 U.S. Dist. LEXIS 9282, at *15 (citations omitted); *see, e.g., Schumacher v. Souderton Area School District*, C.A. No. 99–1515, 2000 WL 72047, at *3 (E.D.Pa. Jan.21, 2000); *Metzgar v. Lehigh Valley Housing Authority*, C.A. No. 98–3304, 1999 WL 310639, at *4 (E.D.Pa. July 27, 1999); *Fullman v. Philadelphia Int'l Airport*, 49 F.Supp.2d 434, 441 (E.D.Pa. 1999); *Brannaka v. Bergey's, Inc.*, C.A. No. 97–6921, 1998 WL 195660, at *1–2 (E.D.Pa. Mar.30, 1998). " 'Courts of Appeals that have directly addressed the issue of individual liability under the ADA have concluded that no such liability exists.' " *Douris v. Brobst*, 2000 WL 199358, 2000 U.S. Dist. LEXIS 1579, at *7 (quoting *Meara v. Bennett*, 27 F.Supp.2d 288, 290 (D.Mass.1998) (citing *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir.1996); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279–82 (7th Cir.1995)).

 In light of these decisions, Plaintiff's ADA retaliation claim against Defendants Gibbons, Henry, Damon, and Rauch in their individual capacities fails as a matter of law and will be dismissed.

---

1. Section 503(a) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12203(a) provides:

 "No person shall discriminate against any individual because such individual has op-

 posed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act."

### b. *Official Capacity*

The Court now considers Plaintiff's ADA retaliation claim against Defendants Bucks County and DA's Office and Defendants Gibbons, Henry, Damon, and Rauch, in their official capacities.

Plaintiff asserts that Defendants filed and/or prosecuted criminal and traffic charges against him in retaliation for his opposition to Bucks County's "illegal practice to discriminate against persons with a disabled [sic] by failing to provide the legally required accessibility to their facilities, and knew or should have know [sic] because Plaintiff has filed discrimination charges against the Defendants with the Department of Justice and PA. Human Relations Commission." (Pl.'s Compl. ¶ 22).

Defendants contend that to bring suit under the ADA, a plaintiff must exhaust his administrative remedies before the EEOC or the PHRC. *See Churchill v. Star Enterprises,* 183 F.3d 184, 190 (3d Cir. 1999). Although Plaintiff filed complaints with the EEOC and the PHRC regarding his belief that Bucks County failed to provide him an accommodation, Pl.'s Compl. ¶ 12, Plaintiff neither alleges nor is there any indication that he filed an ADA retaliation claim with either agency. When a retaliation claim is not specifically presented to the EEOC, the test for whether that claim can be presented in district court is " 'whether the acts alleged in the subsequent . . . suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom.' " *Douris v. Brobst,* 2000 WL 199358, 2000 U.S. Dist. LEXIS 1579, at *9 (quoting *Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir.1984)). "The legal analysis for whether a judicial complaint is within the scope of an earlier administrative charge or a reasonable investigation therefrom turns on whether 'there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it.' " *Ivory v. Radio One, Inc.,* C.A. No. 01–5708, 2002 WL 501489, at *2 (E.D.Pa. Apr.3, 2002) (quoting *Fakete v. Aetna, Inc.,* 152 F.Supp.2d 722, 732 (E.D.Pa.2001)).

■ Although the EEOC was on notice of Plaintiff's complaints against Bucks County for allegedly failing to provide him an accommodation, the EEOC would not have been expected to initiate a retaliation investigation based on Plaintiff's charge. *See id.* 2002 WL 501489, at *9–10 (citing *Fieni v. Pocopson Home,* C.A. No. 96–5343, 1997 WL 220280, at *5–6 (E.D.Pa. Apr.29, 1997) (dismissing retaliation claim where not mentioned in EEOC filing)). Therefore, Plaintiff's ADA retaliation claim against Defendants Bucks County and DA's Office, and against Defendants Gibbons, Henry, Damon, and Rauch, in their official capacities, will be dismissed.

### 2. *First Amendment and § 1983 Claims*

### a. *Absolute Immunity*

In his Complaint, Plaintiff alleges that Defendants "filed and/or prosecuted criminal and traffic charges against the Plaintiff, withheld on these charges Brady exculpatory evidence". (Pl's Compl. ¶ 23). Defendants assert absolute immunity.

■ Prosecutors are absolutely immune for actions performed in a quasi-judicial role. *Imbler v. Pachtman,* 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Kulwicki v. Dawson,* 969 F.2d 1454, 1463 (3d Cir.1992). Absolute immunity is afforded to prosecutors for acts "intimately associated with the judicial phase of the criminal process" such as initiating and prosecuting a criminal case. *Imbler,* 424 U.S. at 430–31, 96 S.Ct. 984.

In *Imbler*, the Supreme Court noted numerous public policy considerations for granting absolute immunity to prosecutors from § 1983 claims stemming from their actions as prosecutors: (1) a prosecutor's exercise of independent judgment would be compromised if he or she were threatened with suits for damages for actions in initiating criminal cases; (2) the prosecutor's energies would be diverted from his or her official duties if forced to defend against § 1983 actions; (3) a post-trial decision in favor of the accused might result in a § 1983 action against the prosecutor for alleged errors or mistakes in judgment. 424 U.S. at 425–27, 96 S.Ct. 984.

■ Plaintiff asserts that Defendants acted in an investigative or administrative capacity and therefore are entitled only to qualified immunity. (Pl.'s Resp. to Def.'s Mot. to Dismiss 3–6). When a prosecutor serves as an administrator rather than an officer of the court, he or she is only entitled to qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). However, prosecutors are absolutely immune in § 1983 actions for their decisions to prosecute, and withholding exculpatory evidence is a quasi-judicial act protected by absolute immunity. *Hull v. Mallon*, C.A. No. 00–5698, 2001 WL 964115, 2001 U.S. Dist. LEXIS, at *5 (E.D.Pa. Aug. 21, 2001). *See also Parker v. Stiles*, C.A. No. 00–5335, 2001 WL 872787, 2001 U.S. Dist. LEXIS 9085, at *3–5 (E.D. Pa. June 29, 2001); *Barnes v. City of Coatesville*, C.A. No. 93–1444, 1993 WL 259329, 1993 U.S. Dist. LEXIS 9112, at *22–24 (E.D. Pa. June 28, 1993).

■ In the instant case, Defendants have absolute immunity from Plaintiff's claims against them for their actions in initiating and prosecuting a criminal investigation and for their alleged improper conduct in withholding exculpatory evidence.

### b. *Collateral Estoppel*

■ The doctrine of collateral estoppel precludes a party from litigating an issue that has already been adjudicated in a previous proceeding. *Witkowski v. Welch*, C.A. No. 92–0924, 1997 WL 181253, 1997 U.S. Dist. LEXIS 4788, at *7 (E.D.Pa. Apr. 14, 1997), *aff'd*, 173 F.3d 192 (3d Cir.1999)). Four elements must be met for collateral estoppel to apply: (1) the issue decided in the prior adjudication must be identical to the one presented in the later action; (2) there must have been a final judgment on the merits; (3) the party against whom collateral estoppel is being asserted must have been a party or in privity with a party to the prior adjudication; (4) the party against whom collateral estoppel is being asserted must have had a full and fair opportunity to litigate the issue in question in the prior action. *Id.* 1997 WL 181253, at *7(citing *Schroeder v. Acceleration Life Ins. Co.*, 972 F.2d 41, 45 (3d Cir.1992); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1073 (3d Cir.1990)).

In the instant case, Plaintiff is collaterally estopped from pursuing any claims of retaliation over his application for the park supervisor position and the subsequent harassment charge and prosecution. Plaintiff litigated these claims in a prior action, which resulted in a jury verdict and entry of judgment for Bucks County and dismissal of the other defendants. Defendants in the instant case are in privity with Bucks County, the defendant in the prior litigation. Therefore, Plaintiff may not relitigate these issues.

### c. *Res Judicata*

■ Claim preclusion, or res judicata, " 'prohibits reexamination not only of mat-

ters actually decided in the prior case, but also those that the parties might have, but did not assert in that action.' " *Williams v. Lehigh County Dep't. of Corrections*, 19 F.Supp.2d 409, 411 (E.D.Pa.1998) (quoting *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir.1993)). Res judicata requires the following three factors: (1) a final judgment on the merits in a prior suit involving (2) the same parties or those in privity with them, and (3) a subsequent suit based on the same cause of action. *Id.* at 411.

In the instant case, Plaintiff's claims are barred by res judicata. Plaintiff's prior action resulted in a jury verdict in favor of Bucks County, the prior defendant with whom Defendants in the instant action are in privity, and this case arose from the same set of facts as the previous case—the application for the park supervisor position and subsequent criminal prosecution and conviction of harassment. Therefore, res judicata prevents Plaintiff's claims.

For the foregoing reasons, Count I of Plaintiff's Complaint against all Defendants will be dismissed.

**B.** *Count II: Violation of 42 U.S.C § 1983*

1. *Defendants Bucks County, DA's Office, Gibbons, Henry, and Damon*

a. *Individual Capacity*

Count II of Plaintiff's Complaint is based on § 1983 [2] violations allegedly committed by Defendants Gibbons, Henry, and Damon including initiating a prosecution without cause, withholding evidence, denying a fair trial, and failing to provide exculpatory evidence. Pl.'s (Compl.¶ 31–35).

To the extent that Plaintiff's claims concern the 2001 arrest and prosecution, those claims will be dismissed because of Defendants' absolute immunity, as discussed in Section III.A.2.a, *supra*. Plaintiff's claims regarding the May 1999 harassment charge and subsequent prosecution and his retaliation claims will be dismissed based on collateral estoppel and res judiciata, as discussed in Sections III.B.2.b and c, *supra*.

b. *Official Capacity*

Plaintiff also sues Defendants Gibbons, Henry and Damon under § 1983. Under § 1983, "official capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Douris*, 2001 WL 767579, 2001 U.S. Dist. LEXIS 9282, at *22 (citing *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("there is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, . . . local government units can be sued directly for damages and injunctive or declaratory relief.")).

Since Plaintiff has directly sued Bucks County and the DA's Office under § 1983, his official capacity claims against Defendants Gibbons, Henry, and Damon are unnecessary and will be dismissed. His claims against Bucks County and the DA's Office will not be dismissed.

2. *Defendant Rauch*

a. *Individual Capacity*

With respect to Plaintiff's charges of impersonating a police officer, making ter-

---

**2.** 42 U.S.C. § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

rorist threats, disorderly conduct, harassment, and duty to give information and render aid, Plaintiff claims that Defendant Rauch filed "false and baseless criminal charges" against him, (Pl.'s Compl. ¶ 29), and claims that Rauch knew that there was no probable cause for the charges because Plaintiff had called the police himself. *Id.* at ¶ 30.

■ The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause, which exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police,* 71 F.3d 480, 483 (3d Cir. 1995). A § 1983 plaintiff who challenges the validity of a search warrant by asserting that a law enforcement agent submitted a false affidavit to the issuing judicial officer must satisfy the two-part test outlined in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir.1997). The plaintiff must prove that the officer knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant and that such statements or omissions were necessary to find probable cause. *Id.* (citing *Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674).

■ Plaintiff does not allege that Rauch knowingly proffered false or misleading information in the affidavit of probable cause which resulted in the criminal complaint being signed by a district justice. The affidavit contains the results of interviews with three witnesses whose testimony set forth the relevant facts underlying the criminal charges against Plaintiff.[3] (Def. Rauch's Mot. to Dismiss Ex. A). Rather, Plaintiff claims that Rauch knew or should have known that there "was no evidence to support the elements of every charge brought, and to such degree that at the preliminary hearing charges were dismissed, on a writ of habeas corpus further charges were dismissed, and no conviction resulted from any charges." (Pl.'s Compl. ¶ 30b). Plaintiff's allegations are sufficient to support a claim to be free from arrest, detention, and prosecution under the Fourth Amendment.

*i. Qualified Immunity*

■ Having concluded that Plaintiff has stated a Fourth Amendment claim, the Court must determine if Defendant Rauch is entitled to qualified immunity, as he asserts. (Def. Rauch's Mot. to Dismiss 6–8). Government officials performing discretionary functions are "shielded from liability for civil damages insofar as their

**3.** With the exception of "document[s] integral to or explicitly relied upon in the complaint", *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1426 (3d Cir.1997), "if matters outside the pleadings are presented to the district court on a motion under Rules 12(b)(6) or 12(c), and the court does not exclude them, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles." *Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir.1992). Although the district court has discretion to convert a motion to dismiss into a motion for summary judgment, *id.* at 1462, the parties must be given adequate notice that the motion to dismiss will be considered under Rule 56. *See Rose v. Bartle,* 871 F.2d 331, 341–42 (3d Cir.1989); Fed.R.Civ.P. 12(b). The parties in the instant case have not been so notified, and Plaintiff has not been afforded a reasonable opportunity to present any evidentiary materials necessary to respond to such a motion. Therefore, this Court shall not consider any of the attached exhibits in Defendant's Motion to Dismiss. Defendants may raise these materials in a summary judgment motion.

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar v. Felsing,* 128 F.3d 810, 826 (3d Cir.1997) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In § 1983 cases alleging a violation of the Fourth Amendment, the question of immunity focuses on whether a reasonable officer could have believed that his conduct was lawful in light of clearly established law and the information in the officer's possession. *Id.* As the Third Circuit explained in *Sharrar:*

> "Law enforcement officials who 'reasonably but mistakenly' conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity. In this way, the 'qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.' "

128 F.3d at 826 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (additional citations omitted)).

Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that the facts as alleged in the Complaint are sufficient to support a finding that no reasonable police officer could have believed that probable cause existed to support the charges against Douris. Therefore, Defendant Rauch's Motion to Dismiss Count II in his individual capacity on the basis of qualified immunity will be denied.

### b. *Official Capacity*

For the reasons discussed in Section III.B.1.b, *supra,* because Plaintiff has directly sued Bucks County and the DA's Office under § 1983, his official capacity claim against Defendant Rauch is unnecessary and will be dismissed.

### C. *Count III: Retaliation under the PHRA*

■ In Count III of his Complaint, Plaintiff Alleges that Defendants' conduct constituted unlawful retaliation in violation of the PHRA. To bring suit under the PHRA, Pennsylvania law requires that a plaintiff must exhaust his administrative remedies before maintaining an action under that act. 42 Pa. Cons.Stat. Ann. § 942(c); *Woodson v. Scott Paper Co.,* 109 F.3d 913, 925 (3d Cir.1997). Although Plaintiff filed a complaint with the PHRC regarding his belief that Bucks County failed to provide him an accommodation, Pl.'s Compl. ¶ 12, Plaintiff neither alleges nor is there any indication that he filed a retaliation claim with the PHRA. The analysis of whether a plaintiff has exhausted his administrative remedies is identical under Title VII and the PHRA. *Ivory,* 2002 WL 501489, at *2 n. 1. As discussed in Section III.A.1.b, *supra,* although the PHRA was on notice of Plaintiff's complaints against Bucks County for allegedly failing to provide him an accommodation, the PHRA would not have been expected to initiate a retaliation investigation based on Plaintiff's charge. Therefore, Plaintiff's PHRA retaliation claim against Defendants Bucks County, DA's Office, Gibbons, Henry, Damon, and Rauch will be dismissed.

### D. *Count IV: Malicious Prosecution, Abuse of Criminal Process, Conspiracy*

In Count IV, Plaintiff asserts claims under Pennsylvania state law for malicious prosecution, abuse of process, and conspiracy. (Pl.'s Compl. ¶¶ 43–45).

### 1. *Defendants Bucks County and DA's Office*

■ As local agencies, Defendants Bucks County and DA's Office contend,

and Plaintiff concedes, Pl.'s Resp. to Def.'s Mot. to Dismiss 13, that they are immune from intentional tort actions under the Political Subdivisions Tort Claims Act ("PSTCA"), 42 Pa. Cons.Stat. Ann. § 8541 *et seq.; Douris v. County of Bucks*, 2001 WL 767579, 2001 U.S. Dist. LEXIS 9282, at *25–28 (finding Bucks County immune under the PSTCA). *See also Barnes*, 1993 WL 259329, 1993 U.S. Dist. LEXIS 9112, at *17–19 (granting motion to dismiss based on district attorney office's immunity under the PSTCA). Count IV against Defendants Bucks County and DA's Office therefore will be dismissed because of their immunity under the PSTCA for the intentional torts of malicious prosecution, abuse of process, and conspiracy.

### 2. *Defendants Gibbons, Henry, and Damon*

Plaintiff alleges that Defendants Gibbons, Henry, and Damon "conspired to withhold exculpatory evidence from Plaintiff in order to deny him his right to a fair trial and obtain a conviction, so as to case [sic] him to expend money, face jail time, and stop or punish him from his protected activities." (Pl.'s Compl. ¶ 43).

Pennsylvania law provides absolute immunity that is similar to that provided by *Imbler* and its progeny. *See Durham v. McElynn*, 565 Pa. 163, 772 A.2d 68 (2001). In *Durham*, a prisoner sued the Erie County assistant district attorney who prosecuted him based on the prosecutor's alleged improper conduct during the trial. *Id.* at 68–69. The plaintiff alleged that the prosecutor had allowed perjured testimony to be used at the preliminary hearing and trial and prevented the plaintiff from presenting a witness at trial. *Id.* at 69. The Court determined that prosecutors enjoy absolute immunity from civil suits based on actions taken in the course of their official duties. *Id.* at 70.

"Absolute privilege, as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority. . . ."

*Id.* at 69 (quoting *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892, 895 (1952)).

In the instant case, Plaintiff's claims are barred by Defendants' absolute immunity, and therefore Count IV against Defendants Gibbons, Henry, and Damon will be dismissed.

### 3. *Defendant Rauch*

#### a. *Malicious Prosecution*

Plaintiff alleges that he was subject to malicious prosecution by Defendant Rauch. To state a claim for malicious prosecution under Pennsylvania law, a plaintiff must allege that (1) the defendant instituted the proceedings against the plaintiff, (2) without probable cause, (3) with malice, and (4) the proceedings terminated in the plaintiff's favor. *Watson v. Abington Township*, C.A. No. 01–5501, 2002 U.S. Dist. LEXIS 16300, at *26 (E.D.Pa. Aug. 12, 2002) (citing *McKibben v. Schmotzer*, 700 A.2d 484, 492 (Pa.Super.1997)).

Defendant asserts that Plaintiff has mounted an incomplete challenge to probable cause and the claim should be dismissed. (Def. Rauch's Mot. to Dismiss 9). However, as discussed in Section III. B.2.a. n. 1, *supra*, this Court can not consider matters outside the pleadings at the 12(b)(6) stage without converting the motion to dismiss into a motion for summary judgment. Accordingly, the Court will only consider Plaintiff's Complaint at this

stage. In his Complaint, Plaintiff alleges that Defendant Rauch instituted proceedings against him without probable cause, with malice, and that the proceedings terminated in Plaintiff's favor. (Pl.'s Compl. ¶¶ 20, 29–30). The Court finds that Plaintiff has sufficiently alleged a cause of action for malicious prosecution, and the claim will not be dismissed.

### b. *Abuse of Process*

 In order to state a claim for abuse of process, the plaintiff must allege that the defendant: (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designated, and (3) harm has been caused to the plaintiff. *Douris*, 2001 WL 767579, 2001 U.S. Dist. LEXIS, at *30 (citations omitted). "[T]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it. An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect, in other words, a perversion of it." *Id.* 2001 WL 767579, at *31 (citing *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020, 1023 (1987)).

 In the instant case, Plaintiff has not alleged that Defendant Rauch legitimately brought the charges against Plaintiff, and then the legal process was perverted. "There is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion." *Cameron v. Graphic Management Associates, Inc.,* 817 F.Supp. 19, 21 (E.D.Pa.1992). As Plaintiff has failed to state a claim for abuse of process, his claim will be dismissed.

### c. *Civil Conspiracy*

 Under Pennsylvania law, a complaint for civil conspiracy must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuit of a common purpose, and (3) actual legal damage. *McKeeman v. Corestates Bank,* 751 A.2d 655, 659 (Pa.Super.2000). "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Id.* at 659 (citations omitted).

Plaintiff's Complaint alleges that Rauch conspired with Defendants Gibbons, Henry, and Damon "to withhold exculpatory evidence from Plaintiff in order to deny him a fair trial and obtain a conviction, so as to case [sic] him to spend money, face jail time, and stop or punish him from his protected activities." (Pl.'s Compl. ¶ 43). Plaintiff further alleges that Rauch destroyed evidence in furtherance of the conspiracy. *Id.* at ¶ 44. However, as to damages, Plaintiff claims that "[a]s a direct result of the conspiracy the Plaintiff was unable to present defense, impeach Commonwealth witness, present evidence favorable to him and which corroborated his claims, have a fair trial process, effective assistance of counsel, a meaningful or adequate appeal process to review his conviction, and remains convicted off [sic] harassment." *Id.* at ¶ 45. These damages are a result of the May 1999 harassment prosecution and do not involve Rauch. The charges brought by Rauch were dismissed, *id.* at ¶ 20, and Plaintiff does not claim that he suffered damages from the alleged conspiracy between Rauch and the other Defendants. Therefore, Plaintiff does not state a claim for civil conspiracy against Defendant Rauch, and this aspect of Count IV will be dismissed.

Regarding Count IV against Defendant Rauch, Plaintiff's claims of abuse of process and civil conspiracy will be dismissed.

Plaintiff's claim of malicious prosecution against Defendant Rauch under Count IV will not be dismissed.

### E. Count V: Pennsylvania Constitutional Claims and Conspiracy

 In Count V, Plaintiff claims his rights were violated under the Pennsylvania Constitution. However, the Supreme Court of Pennsylvania has not ruled on the issue of whether there is a private cause of action for damages under the state constitution, and the federal courts in this Circuit that have considered the issue have concluded that there is no such right under the Pennsylvania Constitution. *Kelleher v. City of Reading*, C.A. No. 01–3386, 2001 WL 1132401, 2001 U.S. Dist. LEXIS 14958, at *9–10 (E.D.Pa. Sept. 24, 2001) (citing *Dooley v. City of Philadelphia*, 153 F.Supp.2d 628, 663 (E.D.Pa.2001); *Sabatini v. Reinstein*, C.A. No. 99–2393, 1999 WL 636667, 1999 U.S. Dist. LEXIS 12820, at *6 (E.D.Pa. Aug. 20, 1999); *Holder v. City of Allentown*, C.A. No. 91–240, 1994 WL 236546, 1994 U.S. Dist. LEXIS 7220, at *11 (E.D.Pa. May 27, 1994); *Lees v. West Greene Sch. Dist.*, 632 F.Supp. 1327, 1335 (W.D.Pa.1986); *Pendrell v. Chatham Coll.*, 386 F.Supp. 341, 344 (W.D.Pa.1974)). Therefore, Plaintiff's claims fail as a matter of law.

Additionally, Plaintiff's civil conspiracy claim, which is duplicative of his claim in Count IV, is barred against Defendants Bucks County and DA's Office by the PSTCA, as discussed in Section III.D.1, *supra*. His civil conspiracy claim is barred against Defendants Gibbons, Henry, and Damon by their absolute immunity as discussed in Section III.D.2, *supra*. Plaintiff's civil conspiracy claim against Defen-

dant Rauch will be dismissed because Plaintiff has not alleged facts sufficient to state a claim for conspiracy, as discussed in Section III.D.3c, *supra*.

For the reasons discussed above, Count V against all Defendants will be dismissed.

### F. Count VI: Unconstitutionally Inadequate State Appeals Procedure

Count VI of Plaintiff's Complaint is brought under 42 U.S.C. § 1983 and alleges that Defendant Schweiker "fails to have an adequate or meaningful appeal process that meets federal constitutional due process requirements designed to insure against prosecutorial misconduct." (Pl.'s Compl. ¶ 52). Plaintiff seeks money damages and a declaratory judgment that the "State appeal process [is] constitutionally inadequate." *Id.* at ¶ 55.

 The Eleventh Amendment bars Plaintiff's § 1983 damages claim against Schweiker in his official capacity.[4] Federal courts can not consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Edelman v. Jordan*, 415 U.S. 651, 662, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This immunity extends to suits asserting civil rights violations where the state is named as a defendant. *Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir.1981). "Under the Eleventh Amendment, a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision

---

4. The Eleventh Amendment states:
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

granting Congress that power." *Chittister v. Dep't. of Community & Economic Dev.*, 226 F.3d 223, 226 (3d Cir.2000).

■■■■ The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment. "By statute Pennsylvania has specifically withheld consent [to be sued]." *Laskaris*, 661 F.2d at 25 (citing Pa. Cons.Stat. Ann. § 8521(b)). Additionally, § 1983 does not abrogate the Eleventh Amendment. *Quern v. Jordan*, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Further, the Eleventh Amendment immunizes state officials acting in their official capacity, such as Schweiker, from § 1983 damages claims by individuals. *Kentucky v. Graham*, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

An essential element of any claim under § 1983 is that the alleged wrongdoing was committed by a "person." 42 U.S.C. § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Plaintiff argues that the Eleventh Amendment does not bar his damages claim against Defendant Schweiker in his official capacity because by receiving federal money, the Commonwealth of Pennsylvania has contracted away its right to Eleventh Amendment immunity. (Praecipe to Court of 8/21/02, at 1). In support of that proposition, Plaintiff cites *Barnes v. Gorman*, 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) and *South Dakota v. Dole*, 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). However, both of these cases are unavailing to Plaintiff. *Barnes* was brought under § 202 of the ADA and § 504 of the Rehabilitation Act and held that a remedy is appropriate under Spending Clause legislation if the funding recipient is on notice that it is subject not only to those remedies provided in the relevant legislation but also to remedies usually available in breach of contract suits. 536 U.S. at —— – ——, 122 S.Ct. at 2101–02. *Dole* held that a federal statute conditioning a state's receipt of highway funds on that state's adoption of a minimum drinking age was a valid use of Congress' spending power. 483 U.S. at 208–09, 107 S.Ct. 2793. Neither case involved a § 1983 claim, and as discussed above, Congress has not abrogated the Eleventh Amendment immunity of the states.

Additionally, Schweiker notes that only the Pennsylvania General Assembly has the power to make laws which affect the criminal appeals process. (Def. Schweiker's Mot. to Dismiss 7–8). "The 'legislative power' in its most pristine form is the power 'to make, alter and repeal laws.'" *Blackwell v. State Ethics Comm'n*, 523 Pa. 347, 567 A.2d 630, 636 (1990) (citations omitted); Pa. Const. art. I, § 1. The Pennsylvania Supreme Court has the exclusive power to establish rules of procedure for Commonwealth's judicial system. *Commonwealth v. Brown*, 447 Pa.Super. 454, 669 A.2d 984, 988 (1995) (citing Pa. Const. art. V, § 10(c)). Even if the Governor did not have sovereign immunity under the Eleventh Amendment, Plaintiff still has not stated a claim against him because it is the General Assembly and/or the Pennsylvania Supreme Court, not the Governor, which has the power to change the state's criminal appeals process.

For the foregoing reasons, Plaintiff's § 1983 claim against Defendant Schweiker in his official capacity will be dismissed.

## IV. *Conclusion*

For the reasons stated above, Defendants' Motions to Dismiss will be granted in part and denied in part.

An appropriate Order follows.

## ORDER

AND NOW, this 23rd day of October, 2002, upon consideration of Plaintiff's Complaint, Defendants' Motions to Dismiss, and responses and replies thereto, it is hereby ORDERED as follows:

1. Defendants' Diane Gibbons, Michelle A. Henry, and Anne Scheetz Damon's Motion to Dismiss Counts I V is GRANTED with prejudice;

2. Defendants' County of Bucks and Bucks County District Attorney's Office Motion to Dismiss Counts I, III, IV, and V is GRANTED with prejudice;

3. Defendant Timothy Rauch's Motion to Dismiss Counts I, III, and V is GRANTED with prejudice;

4. Defendant Timothy Rauch's Motion to Dismiss Count II in his individual capacity is DENIED;

5. Defendant Timothy Rauch's Motion to Dismiss Count IV is GRANTED with prejudice as to abuse of process and civil conspiracy and DENIED as to malicious prosecution;

6. Defendant Mark S. Schweiker's Motion to Dismiss Count VI of Plaintiff's Complaint is GRANTED with prejudice;

7. Count II of Plaintiff's Complaint shall be answered by Defendants County of Bucks and Bucks County District Attorney's Office and Defendant Timothy Rauch within ten days;

8. Count IV of Plaintiff's Complaint alleging malicious prosecution shall be answered by Defendant Timothy Rauch within ten days.

### MEMORANDUM

BAYLSON, District Judge.

Plaintiff James George Douris ("Plaintiff" or "Douris") commenced this civil rights case against the following defendants: Mark S. Schweiker, Governor of the Commonwealth of Pennsylvania ("Schweiker"); the County of Bucks; the Bucks County District Attorney's Office; Bucks County District Attorney Diane Gibbons; Bucks County Assistant District Attorney Michelle A. Henry; Bucks County Assistant District Attorney Anne Scheetz Damon; and Timothy Rauch, a Bucks County police officer (collectively "Defendants"). The Complaint contains six counts alleging violations and retaliation under the First Amendment and Americans with Disabilities Act ("ADA"), 42 U.S.C § 12101 *et seq.*, 42 U.S.C. § 1983, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons.Stat. Ann. § 951 *et seq.* The Complaint also alleges violations of the Pennsylvania Constitution, malicious prosecution, abuse of process, conspiracy, and a constitutionally inadequate state appeals process. In an October 23, 2002 Order, the Court granted in part and denied in part Defendants' Motions to Dismiss. Plaintiff's only remaining claims are Count II against Defendants County of Bucks, Bucks County District Attorney's Office, and Timothy Rauch alleging violations of 42 U.S.C. § 1983, and Count IV against Defendant Rauch alleging malicious prosecution.

Presently before the Court is Plaintiff's Motion for Reconsideration, and in the Alternative, for Certification to File a Permissive Interlocutory Appeal from the Court's October 23, 2002 Order. For the reasons which follow, Plaintiff's Motion will be denied.

I. *Reconsideration Under Federal Rule of Civil Procedure 59(e)*

The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly

discovered evidence. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986)). A court should grant a motion for reconsideration only "if the moving party establishes one of three grounds: (1) there is newly available evidence; (2) an intervening change in the controlling law; or (3) there is a need to correct a clear error of law or prevent manifest injustice." *Drake v. Steamfitters Local Union No. 420,* C.A. No. 97–585, 1998 WL 564486, 1998 U.S. Dist. LEXIS 13791, at *7–8 (E.D.Pa. Sept. 3, 1998) (citing *Smith v. City of Chester,* 155 F.R.D. 95, 96–97 (E.D.Pa.1994)). "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Industries, Inc.,* 884 F.Supp. 937, 943 (E.D.Pa.1995).

 Plaintiff does not demonstrate the existence of any of the three factors for reconsideration. He presents no new evidence, shows no intervening change in controlling law, and points to no clear error of law or manifest injustice. *See Drake,* 1998 WL 564486, 1998 U.S. Dist. LEXIS 13791, at *7–8. A motion for reconsideration is not properly grounded on a request that the Court simply rethink a decision it has already made. *Glendon Energy Co. v. Borough of Glendon,* 836 F.Supp. 1109, 1122 (E.D.Pa.1993). Therefore, the Court declines to reconsider its decision to grant Defendants' Motions to Dismiss.

## II. Certification of Interlocutory Appeal Under 28 U.S.C. § 1292(b)

 In general, a matter may not be appealed to a court of appeals until a final judgment has been rendered by the district judge under 28 U.S.C. § 1291. A district court is authorized to certify an order for interlocutory appeal only if it finds that: (1) the order involves a controlling question of law, (2) upon which there is substantial ground for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The decision to certify an appeal rests within the sound discretion of the district court. *United States v. Exide Corporation,* C.A. No. 00–3057, 2002 WL 992817, at *2 (E.D.Pa. May 15, 2002) (citing *Delaware Valley Toxics Coalition v. Kurz–Hastings, Inc.,* 813 F.Supp. 1132, 1142 (E.D.Pa.1993). The burden is on the party seeking certification to demonstrate that "exceptional circumstances justify a departure from the basic policy against piecemeal litigation and of postponing appellate review until after the entry of a final judgment." *Rottmund v. Continental Assurance Co.,* 813 F.Supp. 1104, 1112 (E.D.Pa.1992).

 Plaintiff maintains that he is entitled to immediate appellate review of the following issues: (1) whether Plaintiff may challenge the constitutionality of the state appeals process, and if the governor is properly named as a defendant for that challenge; (2) whether absolute immunity is afforded to prosecutors for withholding exculpatory evidence; and (3) whether Plaintiff was estopped under the doctrines of res judicata and/or collateral estoppel from pursuing § 1983 claims against the defendant prosecutors.

### A. Constitutionality of the State Appeals Process

Plaintiff seeks certification over "the issue of whether the Plaintiff could challenge the constitutionality of the Commonwealth of Pennsylvania's appeal process as it was applied and on its face. Also, whether the Governor is the proper person to be named as defendant, and if dismissal was proper under the Eleventh Amendment." (Pl.'s Mem. Supp. Mot. 5). In its

October 23, 2002 Memorandum and Order, the Court addressed Plaintiff's claim and provided sufficient support for its conclusion that the Eleventh Amendment barred Plaintiff's Complaint against Defendant Schweiker in his official capacity and that he was not properly named as a defendant:

> Count VI of Plaintiff's Complaint is brought under 42 U.S.C. § 1983 and alleges that Defendant Schweiker "fails to have an adequate or meaningful appeal process that meets federal constitutional due process requirements designed to insure against prosecutorial misconduct." (Pl.'s Compl. ¶ 52). Plaintiff seeks money damages and a declaratory judgment that the "State appeal process [is] constitutionally inadequate." *Id.* at ¶ 55.

> The Eleventh Amendment bars Plaintiff's § 1983 damages claim against Schweiker in his official capacity. [ (footnote omitted) ]. Federal courts can not consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); *Edelman v. Jordan,* 415 U.S. 651, 662, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). This immunity extends to suits asserting civil rights violations where the state is named as a defendant. *Laskaris v. Thornburgh,* 661 F.2d 23, 26 (3d Cir. 1981). "Under the Eleventh Amendment, a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." *Chittister v. Dep't. of Community & Economic Dev.,* 226 F.3d 223, 226 (3d Cir. 2000).

> The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment. "By statute Pennsylvania has specifically withheld consent [to be sued]." *Laskaris,* 661 F.2d at 25 (citing Pa. Cons.Stat. Ann. § 8521(b)). Additionally, § 1983 does not abrogate the Eleventh Amendment. *Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Further, the Eleventh Amendment immunizes state officials acting in their official capacity, such as Schweiker, from § 1983 damages claims by individuals. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

> An essential element of any claim under § 1983 is that the alleged wrongdoing was committed by a "person." 42 U.S.C. § 1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

> Plaintiff argues that the Eleventh Amendment does not bar his damages claim against Defendant Schweiker in his official capacity because by receiving federal money, the Commonwealth of Pennsylvania has contracted away its right to Eleventh Amendment immunity. (Praecipe to Court of 8/21/02, at 1). In support of that proposition, Plaintiff cites *Barnes v. Gorman,* 536 U.S. 181, 122 S.Ct. 2097, 153 L.Ed.2d 230 (2002) and *South Dakota v. Dole,* 483 U.S. 203, 107 S.Ct. 2793, 97 L.Ed.2d 171 (1987). However, both of these cases are unavailing to Plaintiff. *Barnes* was brought under § 202 of the ADA and § 504 of the Rehabilitation Act and held that a remedy is appropriate under Spending Clause legislation if the funding recipient is on notice that it is subject not only to those remedies provided in the relevant legislation but also to remedies usually available in breach of contract suits. 536 U.S. at ——–——, 122 S.Ct. at 2101–02. *Dole* held that a federal stat-

ute conditioning a state's receipt of highway funds on that state's adoption of a minimum drinking age was a valid use of Congress' spending power. 483 U.S. at 208–09. Neither case involved a § 1983 claim, and as discussed above, Congress has not abrogated the Eleventh Amendment immunity of the states.

Additionally, Schweiker notes that only the Pennsylvania General Assembly has the power to make laws which affect the criminal appeals process. (Def. Schweiker's Mot. to Dismiss 7–8). "The 'legislative power' in its most pristine form is the power 'to make, alter and repeal laws.'" *Blackwell v. State Ethics Comm'n*, 523 Pa. 347, 567 A.2d 630, 636 (Pa.1990) (citations omitted); Pa. Const. art. I, § 1. The Pennsylvania Supreme Court has the exclusive power to establish rules of procedure for Commonwealth's judicial system. *Commonwealth v. Brown*, 447 Pa.Super. 454, 669 A.2d 984, 988 (Pa.Super.1995) (citing Pa. Const. art. V, § 10(c)). Even if the Governor did not have sovereign immunity under the Eleventh Amendment, Plaintiff still has not stated a claim against him because it is the General Assembly and/or the Pennsylvania Supreme Court, not the Governor, which has the power to change the state's criminal appeals process.

For the foregoing reasons, Plaintiff's § 1983 claim against Defendant Schweiker in his official capacity will be dismissed.

*Douris v. Schweiker*, 229 F.Supp.2d 391, 406 (E.D.Pa.2002).

Plaintiff's brief in support of his Motion does not point out any legal error in the above analysis.

B. *Absolute Immunity*

Plaintiff also seeks certification of whether prosecutors are entitled to absolute immunity for withholding exculpatory evidence, an action that he maintains is an administrative function. (Pl.'s Mem. Supp. Mot. 4). The Court's October 23, 2002 Memorandum and Order amply supported its conclusion that the defendant prosecutors are entitled to absolute immunity for their quasi-judicial actions at issue in this case:

In his Complaint, Plaintiff alleges that Defendants "filed and/or prosecuted criminal and traffic charges against the Plaintiff, withheld on these charges Brady exculpatory evidence." (Pl.'s Compl. ¶ 23). Defendants assert absolute immunity.

Prosecutors are absolutely immune for actions performed in a quasi-judicial role. *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Kulwicki v. Dawson*, 969 F.2d 1454, 1463 (3d Cir.1992). Absolute immunity is afforded to prosecutors for acts "intimately associated with the judicial phase of the criminal process" such as initiating and prosecuting a criminal case. *Imbler*, 424 U.S. at 430–31. In *Imbler*, the Supreme Court noted numerous public policy considerations for granting absolute immunity to prosecutors from § 1983 claims stemming from their actions as prosecutors: (1) a prosecutor's exercise of independent judgment would be compromised if he or she were threatened with suits for damages for actions in initiating criminal cases; (2) the prosecutor's energies would be diverted from his or her official duties if forced to defend against § 1983 actions; (3) a post-trial decision in favor of the accused might result in a § 1983 action against the prosecutor for alleged errors or mistakes in judgment. 424 U.S. at 425–27.

Plaintiff asserts that Defendants acted in an investigative or administrative ca-

pacity and therefore are entitled only to qualified immunity. (Pl.'s Resp. to Def.'s Mot. to Dismiss 3–6). When a prosecutor serves as an administrator rather than an officer of the court, he or she is only entitled to qualified immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). However, prosecutors are absolutely immune in § 1983 actions for their decisions to prosecute, and withholding exculpatory evidence is a quasi-judicial act protected by absolute immunity. *Hull v. Mallon,* C.A. No. 00–5698, 2001 WL 964109, 2001 U.S. Dist. LEXIS 12755, at *5 (E.D.Pa. Aug. 21, 2001). *See also Parker v. Stiles,* C.A. No. 00–5335, 2001 WL 755094, 2001 U.S. Dist. LEXIS 9085, at *3–5 (E.D. Pa. June 29, 2001); *Barnes v. City of Coatesville,* C.A. No. 93–1444, 1993 WL 259329, 1993 U.S. Dist. LEXIS 9112, at *22–24 (E.D. Pa. June 28, 1993).

In the instant case, Defendants have absolute immunity from Plaintiff's claims against them for their actions in initiating and prosecuting a criminal investigation and for their alleged improper conduct in withholding exculpatory evidence.

229 F.Supp.2d at 399.

Plaintiff's brief in support of his Motion does not point out any legal error in the above analysis.

### C. *Res Judicata and/or Collateral Estoppel*

Finally, Plaintiff contends certification is necessary to determine if res judicata and/or collateral estoppel estopped Plaintiff from pursuing his § 1983 claims against the defendant prosecutors. The Court addressed this issue in its October 23, 2002 Memorandum and Order:

The doctrine of collateral estoppel precludes a party from litigating an issue that has already been adjudicated in a previous proceeding. *Witkowski v. Welch,* C.A. No. 92–0924, 1997 WL 181253, 1997 U.S. Dist. LEXIS 4788, at *7 (E.D.Pa. Apr. 14, 1997), *aff'd,* 173 F.3d 192 (3d Cir.1999). Four elements must be met for collateral estoppel to apply: (1) the issue decided in the prior adjudication must be identical to the one presented in the later action; (2) there must have been a final judgment on the merits; (3) the party against whom collateral estoppel is being asserted must have been a party or in privity with a party to the prior adjudication; (4) the party against whom collateral estoppel is being asserted must have had a full and fair opportunity to litigate the issue in question in the prior action. *Id.* at *7 (citing *Schroeder v. Acceleration Life Ins. Co.,* 972 F.2d 41, 45 (3d Cir.1992); *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1073 (3d Cir.1990)).

In the instant case, Plaintiff is collaterally estopped from pursuing any claims of retaliation over his application for the park supervisor position and the subsequent harassment charge and prosecution. Plaintiff litigated these claims in a prior action, which resulted in a jury verdict and entry of judgment for Bucks County and dismissal of the other defendants.

Defendants in the instant case are in privity with Bucks County, the defendant in the prior litigation. Therefore, Plaintiff may not relitigate these issues.

#### c. *Res Judicata*

Claim preclusion, or res judicata, " 'prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not assert in that action.' " *Williams v. Lehigh County Dep't. of Corrections,* 19 F.Supp.2d 409, 411 (E.D.Pa.1998) (quoting *Edmundson v. Borough of Kennett Square,* 4 F.3d 186,

189 (3d Cir.1993)). Res judicata requires the following three factors: (1) a final judgment on the merits in a prior suit involving (2) the same parties or those in privity with them, and (3) a subsequent suit based on the same cause of action. *Id.* at 411.

In the instant case, Plaintiff's claims are barred by res judicata. Plaintiff's prior action resulted in a jury verdict in favor of Bucks County, the prior defendant with whom Defendants in the instant action are in privity, and this case arose from the same set of facts as the previous case—the application for the park supervisor position and subsequent criminal prosecution and conviction of harassment. Therefore, res judicata prevents Plaintiff's claims.

*Douris v. Schweiker*, 229 F.Supp.2d at 399.

Plaintiff's brief in support of his Motion does not point out any legal error in the above analysis.

All three of the requirements under § 1292(b) must be met in order for a court to grant certification for appeal. *See Piazza v. Major League Baseball*, 836 F.Supp. 269, 270 (E.D.Pa.1993). Because Plaintiff has not met his burden with regard to these requirements, the Court declines to certify its October 23, 2002 Order for a § 1292(b) interlocutory appeal.

### IV. *Conclusion*

For the reasons stated above, Plaintiff's Motion for Reconsideration, and in the Alternative, for Certification to File a Permissive Interlocutory Appeal from this Court's October 23, 2002 Order will be denied.

An appropriate Order follows.

---

1. Under Fed.R.Civ.P. 15(a), a "party may amend its pleading once as a matter of course at any time before a responsive pleading is served." When Plaintiff filed his Motion to Amend, only a motion to dismiss, but not a responsive pleading, had been filed. Therefore, Plaintiff was free to amend his Complaint without the Court's permission, but apparently chose not to do so.

### ORDER

AND NOW, this 22nd day of November, 2002, upon consideration of Plaintiff's Motion for Reconsideration, and in the Alternative, for Certification to File a Permissive Interlocutory Appeal from this Court's October 23, 2002 Order (Doc. 30), and opposition thereto, it is hereby

ORDERED that Plaintiff's Motion is DENIED.

It is further ORDERED that Plaintiff's Motion to Amend (Doc. 17) is DENIED AS MOOT.[1]